**James M. THOMPSON, et al., Plaintiffs,**

**v.**

**David H. BLAND, et al., Defendants,**

**United States of America Amicus Curiae.**

Civ. A. No. 79–0092–P(J).

United States District Court, W.D. Kentucky, Paducah Division.

June 26, 1986.

Barbara Jones, Linda Cooper, Corrections Cabinet, Frankfort, Ky., for plaintiffs.

Joseph Elder, II, Louisville, Ky., for defendants.

## MEMORANDUM

JOHNSTONE, Chief Judge.

This case is before the court on plaintiffs' motion concerning visitation. Plaintiffs claim that the defendants' suspension of visitation privileges without a hearing violates section 12 of the consent decree as set forth in *Kendrick v. Bland*, 541 F.Supp. 21 (W.D.Ky.1981), and the due process clause of the 14th Amendment to the United States Constitution.

Specifically, plaintiffs claim that defendants do not have procedures for providing a hearing prior to visitation suspensions, for restoring visits, or for review of the decision to suspend. Plaintiffs also claim that the existing procedures which provide for suspension in connection with nine areas of misconduct, are broad, vague and arbitrary. The particular incidents at issue here concern the suspension of certain individuals from visiting prisoners, and not the suspension of prisoners from receiving visits.

## EXISTING PROCEDURES

The Corrections Policies and Procedures (No. 403.06) governing general inmate visitation provide for the exclusion of visitors for the following reasons:

A. The visitor's presence is a clear and probable danger to the security or orderly operation of the institution;

B. The visitor has a past history of disruptive conduct;

C. The visitor is under the influence of alcohol or drugs;

D. The visitor refuses to be searched or to show proper identification;

E. The visitor is directly related to the inmate's criminal behavior;

F. The visitor is on probation or parole and has no special permission to visit.

In addition to the above restrictions, Kentucky State Reformatory procedures (KSR 16–00–01(K)(1)(a)) add the following:

(5) The visit will be detrimental to the inmate's rehabilitation;

(7) The visitor is a former resident who has left by maximum expiration of sentence and does not have the prior approval of the Warden;

(8) The visitor has previously violated institutional visiting policies;

(9) The visitor is a former employee of KSR and does not have the prior approval of the Warden.

■ This court finds that these regulations are not vague or arbitrary and are within the principles set forth in *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir.1984). This case provides that inmates do not possess a constitutional right to visitation and that prison officials may impose limitations when necessary to ensure the safety of the institution.

## CONSENT DECREE

Section 12 of the consent decree provides that visitation should be maintained at "the current level with minimal restrictions." Defendants claim that the present visitation policy is identical to the one in effect at the time of the consent decree, and that they are not in violation of the decree because it did not establish any additional visitation rights. This court finds that the present policy does not violate Section 12 of the consent decree.

## DUE PROCESS

Plaintiffs claim that they have a liberty interest in visitation and that defendants' present policies violate due process by failing to include a method of reviewing actions suspending that liberty interest. In *Pugliese v. Belson*, 617 F.2d 916, 922 (2d Cir.1980), the court held that a liberty interest may be created by statute, judicial decree or regulation. Plaintiffs state that since an open visitation policy was judicially established in the consent decree, a liberty interest in visitation was created which should not be curtailed absent due process procedures.

A similar issue was addressed by the United States Supreme Court in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), where the court held that procedures set forth in state statutes

and regulations for implementing administrative segregation created a protected liberty interest in remaining in the general prison population. The court stated that the key factor in determining the existence of a liberty interest is whether or not the state's guidelines are mandatory in character, and use language such as "shall", "will", or "must". The court did note, however, that minimal procedures—notice, an informal nonadversary review of the information, and an opportunity by the inmate to be heard—were sufficient to satisfy due process requirements.

Finally, plaintiffs cite *Kozlowski v. Coughlin,* 539 F.Supp. 852 (S.D.N.Y.1982), in support of their position. That case concerned a New York statute which established that "no inmate shall be deprived of the ... visiting privileges available to inmates in the general population." *Id.* at 856. The court held that the statute created a liberty interest in receiving visitors, and that some form of hearing concerning revocation was required. Plaintiffs here claim that since the consent decree provides that "[d]efendants shall continue their open visiting policy," that defendants also must provide a hearing to review revocation of that liberty interest.

▪ In this situation, this court finds no evidence that defendants provide for any type of a review of decisions to revoke or suspend visitation privileges. The language of the consent decree is mandatory in character, within the meaning of *Hewitt v. Helms, supra,* in that it requires continuation of an open visitation policy. Therefore, the plaintiffs possess a liberty interest in open visitation, and defendants must provide minimal due process procedures when visitation of a prisoner is suspended or revoked. Those procedures should include, and may be patterned after, those as provided in *Hewitt v. Helms,* 103 S.Ct. at 874: an informal, nonadversary review in which a prisoner receives notice of and reasons for the revocation, and an opportunity to respond.